**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GENE THROWER on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : : | |
| JOBCASE, INC., and DIGITAL MEDIA SOLUTIONS, LLC | : : : | |
| Defendants. | : : | |

_____/

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Gene Thrower ("Plaintiff" or "Mr. Thrower") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      In violation of the TCPA, JobCase, Inc. ("JobCase") hired the co-defendant, Digital Media, Inc. ("Digital Media"), who made automated telemarketing calls to a cellular telephone number of Mr. Thrower for the purposes of advertising JobCase goods and services using an automated dialing system and a pre-recorded message, which is prohibited by the TCPA.

3.      Digital Media made these calls because of an agreement with JobCase, who hired Digital Media Solutions, LLC ("Digital Media") to generate business through telemarketing and maintained interim control over their actions.

4.     The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5.     A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

6.     Plaintiff Gene Thrower is a resident of the state of Louisiana.

7.     Defendant JobCase, Inc. is a Delaware corporation that maintains its principal place of business in this District at 201 Broadway, Seventh Floor in Cambridge, MA 02139. JobCase has a registered agent of CT Corporation, 155 Federal St., Suite 700 in Boston, MA 02110.

8.     Defendant Digital Media Solutions, LLC is a corporate entity registered in Delaware and maintains its principal place of business at 4800 140th Avenue N, Suite 101 in Clearwater, FL 33762. Digital Media has a registered agent of Universal Registered Agents, Inc., 1317 California St., Tallahassee, FL 32304. Digital Media regularly conducts business in this District, including through the making of telemarketing calls and the entering of the contract that led to the telemarketing calls at issue with JobCase in this District.

### Jurisdiction & Venue

9.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the contract for the telemarketing calls at issue that gave rise to the Plaintiff's claims were made in this District.

## The Telephone Consumer Protection Act

11.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

12.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id*.

13.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

14.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

§ 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order,

18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or

prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer:  (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on behalf
> of a specific seller; and (2) having received this information, agrees unambiguously
> to receive such calls at a telephone number the consumer designates.[] In addition,
> the written agreement must be obtained "without requiring, directly or indirectly,
> that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

18.     "Robocalls and telemarketing calls are currently the number one source of

consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016),

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC
chairman).

19.     "The FTC receives more complaints about unwanted calls than all other
complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer
Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

20.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,
compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National
Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-
events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

21.     *The New York Times* reported on the skyrocketing number of robocall complaints
and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad.
Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),
https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine
Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.
(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-
can-do-about-them-1530610203.

22.     Even more recently, a technology provider combating robocalls warned that
nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion,
Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018),
https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-
by-2019-300711028.html

**Factual Allegations**

23.     JobCase purports to offer job opportunities to individuals.

24.     To generate placements, JobCase relies on telemarketing.

25.     However, JobCase's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

26.     One of JobCase's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

27.     JobCase also strategies for telemarketing involves the use of pre-recorded messages to solicit business by third parties.

28.     JobCase engages this use of this equipment and the technology of recorded messages because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

29.     Through this method, JobCase shifts the burden of wasted time to the consumers it calls with unsolicited messages.

<u>Calls to Mr. Thrower</u>

30.     Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

31.     Mr. Thrower's telephone number, (706) 410-XXXX, is assigned to a cellular telephone service.

32.     Mr. Thrower placed his cellular telephone number on the National Do Not Call Registry.

33.     Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Digital Media Solutions placed an automated telemarketing calls to him on at least the following dates:

      A.   December 20, 2018

      B.   December 21, 2018

      C.   January 7, 2019 (twice)

      D.   January 8, 2019

34.     When the calls were answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

35.     Moreover, on the second January 7, 2019 call, a pre-recorded message was used.

36.     When the Plaintiff finally connected with a live individual on each call, he was solicited to drive for Lyft, a ride-sharing app.

37.     JobCase was purporting to place the Plaintiff with Lyft through its contractual agreement with Lyft to secure drivers.

38.     In order to further investigate the call, the Plaintiff listened to the sales pitch on January 7, 2019.

39.     During the sales pitch, Mr. Thrower was transferred by Digital Media Solutions directly to the JobCase calling center where JobCase attempted to complete the placement with Lyft.

40.     The Caller ID that displayed on the first January 7, 2019 telemarketing call was (706) 214-2148.

41.     Other individuals have complained about receiving solicitation calls from the same numbers. *See* https://www.everycaller.com/phone-number/1-706-214-2148/; https://findwhocallsyou.com/7062142148?CallerInfo (Last Visited February 18, 2019).

42.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

43.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

<u>JobCase's Liability and its Arrangement with Digital Media</u>

44.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

46.     In that ruling, the FCC instructed that sellers such as JobCase may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

47.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

48.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

49.     JobCase is directly liable for the Digital Media telemarketing calls because it actively participated in those calls by participating in the actual calling, as described above.

50.     By engaging Digital Media to make calls on behalf of its agents to generate new business, JobCase "manifest[ed] assent to another person . . . that the agent shall act on the

principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

51.     Moreover, JobCase maintained interim control over Digital Media's actions.

52.     For example, JobCase had absolute control over whether, and under what circumstances, it would accept a customer.

53.     Furthermore, JobCase had day-to-day control over Digital Media's actions, including the ability to prohibit it from using an ATDS to contact potential customers of JobCase. JobCase failed to make such an instruction to Digital Media, and as a result, is liable for Digital Media's conduct.

54.     JobCase also gave interim instructions to Digital Media by providing the volume of calling and leads it would purchase.

55.     Digital Media transferred customer information directly to JobCase.  Thus, the company that JobCase hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, the company that JobCase hired is an apparent agent of JobCase.

56.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

57.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings

this action on behalf of a class of all other persons or entities similarly situated throughout the

United States.

58.     The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the class are the Defendants, and any entities in which the Defendants have a

controlling interest, the Defendants' agents and employees, any judge to whom this action is

assigned and any member of such judge's staff and immediate family.

59.     The class as defined above is identifiable through phone records and phone

number databases.

60.     The potential class members number at least in the thousands, since automated

telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual

joinder of these persons is impracticable.

61.     Plaintiff is a member of the proposed class.

62.     There are questions of law and fact common to Plaintiff and to the proposed class,

including but not limited to the following:

a.      Whether Defendants violated the TCPA by using automated telemarketing

to call cellular telephones;

b.      Whether Defendants placed calls using an automatic telephone dialing system;

c.      Whether JobCase is vicariously liable for the conduct of Digital Media;

d.      Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

e.      Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

63.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the defendants and are based on the same legal and remedial theories.

64.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

65.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

66.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

67.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

68.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Causes of Action

### Count One:
### Violation of the TCPA's Automated Calling provisions

69.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70.     The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

71.     As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

72.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendants' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants from making automated or pre-recorded calls;

F.      An award to Plaintiff and the Class of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

Edward A. Broderick
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760

Telephone: (508) 655-1415
mmccue@massattorneys.net

Andrew W. Heidarpour, *Subject to Pro Hac Vice*
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727